**The STATE of Texas, Appellant,**

v.

**Thomas Michael LYONS, Appellee.**

**No. 431–90.**

Court of Criminal Appeals of Texas, En Banc.

June 26, 1991.

Fred Marsh, Denton, for appellee.

Jerry Cobb, Dist. Atty., and Gwinda Burns, Asst. Dist. Atty., Denton, Robert Huttash, State's Atty., and Alfred Walker, First Asst. State's Atty., Austin, for the appellant.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellee, Thomas Michael Lyons, was convicted by a jury of driving while intoxicated (DWI) TEX.REV.CIV.STAT.ANN. art. 6701*l*–1 (Vernon Supp.1990) and his punishment was assessed at a two-year probated jail sentence and a $600.00 fine. The trial court suspended the jail term and placed him on two-year probation. Appellee filed a successful motion for new trial with the trial court and the State appealed.[1]

The Court of Appeals held that the trial court did not abuse its discretion by granting appellee a new trial and affirmed the trial court's decision in a published opinion, *State v. Lyons*, 785 S.W.2d 946 (Tex.App.–Ft. Worth 1990). We granted the State's petitions for discretionary review upon two grounds to determine: whether the Court of Appeals erred in holding that the trial court had the discretionary authority to grant appellee a new trial based on his second ground for new trial, viz: "(2) that the State suppressed evidence by failing to videotape appellee because it was the policy of the Department of Public Safety (DPS) not to videotape and that the jury's verdict of guilty was contrary to the court's charge on the failure to videotape ...;" and secondly, whether the Court of Appeals erred in holding that when "the representatives of the State fail and refuse to videotape an arrestee pursuant to a statute passed by the Texas Legislature, the trial court had the discretionary authority to fashion a remedy, grant relief and impose a sanction, to-wit, the granting of a new trial, which is over, above and different from the only remedy, relief and sanction which is specifically provided in said statute (TEX. REV.CIV.STAT.ANN. art. 6701*l*–1 note, the "videotape" statute) for a violation thereof."[2] We reverse the judgment of the Court of Appeals.

A review of the facts is necessary. At 9:30 p.m. on July 3, 1987 appellee was arrested for DWI in Denton County. At trial Officer Donald Stewart testified that while on patrol, he observed appellee's vehicle weaving and straddling a lane on a highway so he pulled him over. Appellee testified that he did experience difficulties changing lanes due to holiday traffic congestion and road construction. As to appellee's appearance, Stewart testified to the following: he had a strong alcohol odor; his eyes were bloodshot and somewhat watery; he was uneasy on his feet; and his speech was slow and mumbled.

---

1. In his motion for new trial that was filed with the trial court, appellee alleged: (1) that the trial court misdirected the jury in its charge that the jury could find him guilty if it found that he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body *or* if it found he had a breath alcohol concentration of at least 0.10 grams of alcohol per 210 liters of breath; (2) that the State suppressed evidence by failing to videotape him because it was the policy of the DPS not to videotape and that the jury's verdict of guilty was contrary to the court's charge on the failure to videotape; and (3) that the arresting officer failed to advise him of his right to a blood test, and that the jury's verdict of guilty was contrary to the court's charge in that regard.

2. Tex.R.App.P. 200(c)(1) and (4).

Officer Stewart testified that appellee failed to adequately perform field sobriety tests.[3] Appellee testified to and offered evidence of his physical disabilities to show why he could not perform the tests and that he was not intoxicated.[4] Stewart testified that in his opinion, appellee was intoxicated, and therefore, he was handcuffed and taken to police headquarters.

At the sheriff's office, Stewart testified that he gave appellee Miranda and DWI statutory warnings. Contrary to Stewart's testimony, appellee testified that he was not given Miranda warnings and that Officer Murray later gave him Miranda warnings at the time of his book-in. In addition, he testified that Stewart failed to inform him of a right to have a blood test performed in accordance with TEX.REV.CIV. STAT.ANN. art. 6701*l*–5, Sec. 3(d) (Vernon Supp.1990). As to this latter matter, Stewart testified that he gave appellee these warnings but did not have him sign any warnings because it was not required by department policy.

Officer Stewart testified that he observed appellee for fifteen minutes before administering the intoxilyzer. Contrary to the officer's testimony, appellee testified that he was not observed by any officer because he had wandered away from the intoxilyzer room where Officer Stewart was setting up the machine.

State's Exhibit 3, a copy of appellee's intoxilyzer test result, revealed that his breath contained 0.21 grams of alcohol per 210 liters of breath.[5] Officer James R. Hughes, a DPS intoxilyzer supervisor, testified that the Denton County intoxilyzer was checked before and after this incident and was operating properly. Although the intoxilyzer and video equipment were located in the same room, Stewart testified that highway patrol policy at that time was not to videotape individuals who consent to a breath test.[6]

Testifying for the defendant, Harriette Reust, his fiance, stated that she saw appellee five hours after his release from custody and he did not appear to be intoxicated.

The record remains silent as to the trial court's reasoning for granting appellee a new trial. The Court of Appeals concentrated on appellee's second argument in support of his motion for new trial, the issues relating to the failure to videotape appellee. *See infra* note 1. Therefore, we will address the same.

The issue presented before us is whether a peace officer is required to "use" video camera equipment to record a DWI arrestee. The Court of Appeals held that the trial court did not abuse its discretion by

**3.** The first test consisted of a recital of the alphabet. Stewart stated that appellee recited letters A through N, skipped to O, then skipped to X and stopped. The second test performed was to have appellee stand on the foot of his choice, keep his foot elevated and count backwards from 70 to 55. The officer testified that appellee could not catch his balance and when he finally did, he had to continually put his foot down.

**4.** Appellee testified that his legs were different lengths and introduced an exhibit which showed a prescription for prosthesis (lifts). Other testimony from appellee indicated that he suffered from arthritis and a crushed disc and treated his condition by dieting and taking vitamins, minerals and herbs. On the date in question, appellee testified that he opened a can of beer to take his vitamins on an empty stomach and argued that his diet could have affected the intoxilyzer results.

**5.** According to TEX.REV.CIV.STAT.ANN. art. 6701*l*–1 (Vernon 1991):

(a)(2) "Intoxicated" means:
(A) not having the normal use of mental or physical facilities by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; or
(B) having an alcohol concentration of 0.10 or more.

**6.** Nancy Jessee, Assistant District Attorney in Denton County testified in regard to the aforementioned policy. She testified that on July 2, 1987, she sent a letter to the Highway Patrol. Pertinent parts of the letter read:

Effective immediately, our office is requesting that all DWI suspects be videotaped regardless whether they take a breath test. We recognize that there will be circumstances under which videotapes will not be possible and ask that case reports reflect those circumstances which justify the absence of a tape.

She also stated even though the letter was dated July 2, 1987, presentation for her signature was after that date. Stewart testified that he received the letter after the date of this incident.

granting a new trial based on appellee's contentions regarding the State's failure to videotape.[7] The Court of Appeals held:

... the videotape could have, in effect, provided the only "witness" capable of contradicting the officer's testimony. This is particularly true in the light of Officer Stewart's failure to advise Lyons of his right to a blood test. Under the circumstances in this case, including the DPS officer's failure to videotape Lyons, the trial court could have concluded that the officer intentionally failed to preserve evidence which would have been likely to exculpate the defendant and to have affected the outcome of the case. The trial court could also have concluded that the DPS officer acted in bad faith.

*Lyons*, 785 S.W.2d at 954.

We will address the State's grounds for review together because the State has submitted one argument for both grounds in its brief.[8] First, the State complains that the Court of Appeals erred in holding that the trial court had the discretionary authority to grant appellee a new trial based upon the State's failure to videotape. And secondly, the State asserts that the Court of Appeals erred when it upheld the trial court's grant of a new trial to appellee because the trial court was allowed to fashion a remedy, grant relief and impose a sanction different from the sanction specifically provided for by the Legislature in the videotape statute.

As authority for its position the State relies on appellate decisions dealing with the State's failure to videotape a DWI arrestee. *See e.g., State v. Fox,* 772 S.W.2d 455 (Tex.App.–Beaumont 1989, no pet.); *Green v. State,* 745 S.W.2d 477 (Tex.App.–Corpus Christi 1988, pet. ref'd.); *Ray v. State,* 749 S.W.2d 939 (Tex.App.–San Antonio 1988, pet. ref'd); *Franks v. State,* 724 S.W.2d 918 (Tex.App.–San Antonio 1987, no pet.). The State also cites numerous authority for its contention that the Court of Appeals erred in upholding the trial court's decision to grant appellee a new trial. *See* Tex. Const. Art. 2, § 1; *see also, Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074 (5th Cir.) cert. den., 449 U.S. 889, 100 S.Ct. 246, 66 L.Ed.2d 115 (1980); *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *Ex Parte Hughes,* 133 Tex. 505, 129 S.W.2d 270, 273 (1939); *A.B. Lewis Co. v. Jackson,* 199 S.W.2d 853 (Tex.Civ.App.–Gal., 1947 writ ref'd N.R.E.).

A careful reading of TEX.REV.CIV. STAT.ANN. art. 6701*l*–1 is necessary to address the State's contentions. The Act shows a clear legislative intent for counties with a population of 25,000 or more to purchase and maintain video equipment. There is also a clear legislative intent that the State's failure to videotape a DWI arrestee is admissible at trial. That is the only sanction intended by the legislature for failure to videotape. Pertinent portions of the "videotape" statute read as follows:

Section 24. (a) *Each county with a population of 25,000 or more* (emphasis supplied) according to the most recent federal census *shall purchase and maintain electronic devices capable of visually recording a person arrested*

---

7. The Court of Appeals held that "the substantive law underlying the trial court's grant of a new trial in this case is discussed in a trio of United States Supreme Court cases dealing with "access to evidence" issues. *Lyons,* 785 S.W.2d at 949. *Cf. Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (whereby the police's failure to preserve potentially useful evidence, semen samples, did not constitute a denial of due process absent a showing by the defendant that the police acted in bad faith); *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (where police were not required to preserve DWI suspects' breath samples in order for breath test results be ad-

missible in trial); *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (whereby the defendant, convicted of transporting illegal aliens who were deported before his trial, was required to show how their testimony was relevant and material to his defense).

8. Petition for discretionary review was granted by this Court for the State's Prosecuting Attorney and the State. The State's ground for review concerns whether the panel erred in holding that the trial court did not abuse its discretion in granting a new trial and will be addressed with the State's Prosecuting Attorney's grounds for review.

*within the county* (emphasis supplied) for an offense under Article 6701L–1, Revised Statutes, or Subdivision (2), Subsection (a), Section 19.05, Penal Code.[9] (c) *The fact that an arresting officer or other person acting on behalf of the State failed to visually record a person* arrested for an offense listed in Subsection (a) of this section *is admissible at trial* of the offense if the offense occurred in a county required to purchase and maintain electronic equipment and devices under this section.

Driving While Intoxicated Act, ch. 303, § 24, 1983 Tex.Gen.Laws 1568, 1605 (hereinafter referred to as "the statute") TEX. REV.CIV.STAT.ANN. art. 6701*l*–1 note and V.T.C.A., Penal Code, § 19.05.

During the Senate Committee Hearings on SB1 § 24 (the videotape statute) of the 68th Legislative Session on March 3, 1983, Senator Bill Sarpalius from Randall County stated:

> "When we heard this bill from the State Affairs Committee, a question was brought up involving video cameras. I think it is very important if this State is going to have a strong DWI bill that we get the tools for peace officers to get convictions. We have found through our studies that those states that allow for video cameras their conviction rate is very high."

Several times Sarpalius reemphasized the fact that the goal of § 24 was to give peace officers tools to get convictions. A direct comment by the Senator of whether an officer was required to videotape follows:

> "I don't see anything wrong with requiring a county to spend roughly about $3500.00 to crack down on the problem of drunk driving. *You're giving that county the tools to get convictions, and whether or not they use them or not, or how they use it, that's up to their option* (emphasis supplied)."

Nowhere in the legislative history or in the statute itself did the legislature mandate that an officer "use" the video equipment but only that counties with a population of 25,000 or more are required to "purchase and maintain" video equipment.

Based upon an examination of the legislative intent of the statute, we do not agree with the reasoning of the Court of Appeals in this instance. If the sanction in the statute proves ineffective to carry out the intent of the statute, it is the legislature's prerogative, not the courts' prerogative, to add further sanctions. *See Green v. State,* 745 S.W.2d at 478. The legislative history of the DWI videotape statute indicates that the videotape procedure was created to be used at the discretion of the arresting officer, guided only by his judgment as to its necessity for building an effective case against a DWI arrestee. To bring this goal to fruition, the Legislature mandated the availability of videotape equipment in counties with a population of 25,000 or more. This mandatory language confirms the Legislature's intent to make it possible to convict and punish more DWI defendants, not to give an opportunity to defendants, at county expense, to prove their sobriety. If a defendant feels that an arresting officer abused his discretion by deciding not to videotape him, the Legislature created a means of relief by having this fact admissible at trial. Since the Legislature provided only for this sanction, it would contravene their intent to add the sanction of vitiating a DWI arrest.

The analysis of the legislative intent of the videotape statute makes clear that the only sanction available for failure to make a videotape recording of a DWI arrestee is the fact that the failure itself may be admitted into evidence at trial. *See* TEX.REV.CIV.STAT.ANN. art. 6701*l*–1 note (Vernon Supp.1990). The granting of a new trial, or dismissal of a prosecution, is not a legislative sanctioned remedy for an officer's decision not to make a videotape. The statutory provisions do not make visual recordings an absolute prerequisite to a DWI prosecution. *See Fox,* 772 S.W.2d at 456. The statute simply mandates that, if a visual recording is not made, then that fact is admissible at trial. *See Maddox v.*

---

9. Judicial notice was taken by the trial court regarding the fact that the statute applied in this instance because Denton County had a population over 25,000.

*State*, 705 S.W.2d 739, 741 (Tex.App. [dist. 1] 1986), pet. dism'd, abatement, 770 S.W.2d 780 (Tex.Cr.App.1988). In the instant case the State's failure to videotape appellee was introduced before the jury. After considering and weighing all the evidence, the jury returned a guilty verdict.

We hold that the statute did not mandate the peace officer to videotape appellee. We find a reasonable interpretation to be that the statute does not contemplate and require visual recordings of DWI suspects be made. We further hold that the trial court has abused its discretion in granting appellee a new trial because of the officer's decision to not videotape him. Therefore, we reverse the judgment of the Court of Appeals and remand this case to that Court to resolve the points of error unanswered on original submission.

BENAVIDES, J., concurs in the result.

CLINTON and OVERSTREET, JJ., dissent.