**Charles Ray SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 12–91–00231–CR, 12–91–00232–CR.**

Court of Appeals of Texas, Tyler.

Nov. 22, 1993.

Rehearing Denied Jan. 12, 1994.

Kenneth Huchton, Tyler, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellee.

HOLCOMB, Justice.

Appellant Charles Ray Smith appeals his convictions arising from two separate indictments charging him with sexual assault which were consolidated and tried together. A verdict of guilty was returned by a jury and Appellant was sentenced by the court to two consecutive life sentences and a $10,000 fine in both causes. We will affirm.

Since in point of error number five Appellant contends there was no evidence, or alternatively insufficient evidence, to uphold the jury's finding of guilty, we will discuss this point first.

■ The standard for reviewing sufficiency of the evidence questions on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Cr.App.1989); *Jackson v. State*, 672 S.W.2d 801 (Tex.Cr.App.1984). In reviewing the sufficiency of the evidence, we must consider all of the evidence which the jury was permitted to consider, whether rightly or wrongly. *Thomas v. State*, 753 S.W.2d 688 (Tex.Cr.App.1988).

■ Testimony at trial revealed that the victims, Cindy Abbott and Vicky Catoe, resided in the Dallas area; however, they both had formerly lived in Tyler. They went to the West End Club to celebrate their birthdays, arriving around 10:00 p.m. and staying until closing time. As they were leaving, they struck up a conversation with Appellant and Matthew Jones (Jones) in which they asked if they could obtain some marihuana to smoke on their return to Dallas. Arrangements were made for Appellant and Jones to obtain the marihuana and meet at the West End Shopping Center in Tyler. Both men turned up later at the shopping center in Appellant's Cadillac El Dorado without the marihuana and told the women they knew where a party was where they could obtain marihuana. They talked the women into following them in their truck several miles in the country to the site of an abandoned club. Appellant and Jones told the women to stay there and they would be right back with the marihuana. They returned shortly and drove in front of the truck, effectively blocking the womens' vehicle. The Appellant approached the driver's side of the truck while Jones went to the passenger side. Appellant grabbed the key out of the ignition and dragged Abbott out of the truck and proceeded to rip off her jewelry, placing it in his pocket. He informed Abbott to cooperate or he would kill her. Jones, in the meantime, had grabbed Catoe's purse. In an effort to retrieve the purse, she got out of the truck and the contents of the purse was spilled. Jones then struck Catoe, causing her nose to bleed. The two men put both women in the Appellant's Cadillac and drove them to an area even more remote. The Appellant made Abbott get out of the car and told her

to get undressed or he would kill her, as he had a ".357" in the car, then snatched at her and buttons came off of her clothing. She had taken out a knife which she decided not to use and dropped it on the ground. Abbott testified that she was afraid that she would die. Abbott then testified Appellant lifted her onto the car and "put his mouth on [her] vagina." Next, Appellant penetrated her vagina with his penis, then told her to "suck his penis," and grabbed her by the head and hair so she would comply. It appears Jones was sexually assaulting Catoe in the car. When they had finished, Appellant and Jones decided to switch. Catoe then testified Appellant sexually assaulted her outside of the car. She stated he held her down by her arms and asked her if she had "ever had a black man before." Catoe responded, "No." The Appellant replied, "You're going to see what you've been missing." Appellant then penetrated Catoe's vagina with his penis and during the intercourse, gripped her arms, and insisted she tell him that she wanted him to "come." Several times during this ordeal, Appellant threatened to inject the victims with illegal drugs and showed them a plastic syringe. After the assault, Abbott convinced Appellant to take them to a motel where they could be more comfortable. She testified she was hoping to gain his trust so she could make it to a public place so help could be summoned. Appellant rode in Abbott's truck and Jones, with Catoe, went in the Cadillac to where Appellant directed his Cadillac be parked. Jones and Catoe then got in the back of Abbott's truck which had a camper shell on it. Once they arrived at Motel 6, she went inside the motel ostensibly to rent a room. Instead, she alerted the clerk of the offense and asked her to call the police. The motel clerk testified that Abbott told her she had been raped. The motel clerk called 911, and the police arrived shortly. Smith County Deputy Cox testified that when he arrived both women were "crying and upset." Detective Melody McKay observed both women at the hospital, where they were taken almost immediately and she described their emotional state as "upset." A doctor who examined both women testified Abbott had fresh scratches on her back and he detected "motile sperm" in Catoe's vagina. He also noticed her nose was tender. After they were examined at the hospital, Detective McKay, accompanied by the victims, went to the scene of the assault. There, they found Appellant's gas bill along with buttons matching the buttons missing from Abbott's blouse, and her pocket knife. Officer Lenderman of the Tyler Police Department testified he searched the Appellant at the scene of the arrest and he found Catoe's MPACT card and Abbott's jewelry on him. A syringe was found on the floorboard of Catoe's truck. The statements the witnesses gave immediately after the incident were consistent, even though they gave them separate and apart. Considering the evidence in the light most favorable to the verdict, we find that the evidence was sufficient to sustain the jury's guilty verdict. Point of error five is overruled.

In point of error number one, Appellant complains that the trial court erred and abused its discretion in denying Appellant's motion for new trial where it was shown that jurors had discussed Appellant's failure to testify at his trial and had taken his failure to testify into consideration as a circumstance against him. In point of error number two, where it was shown that during deliberations, they had speculated as to the reasons for Appellant's failure to testify.

These points will be discussed together since they address the same issue. Appellant filed his motion for new trial alleging that jurors had discussed his failure to testify at trial during deliberations. At a hearing on the motion for new trial, Warren Powell, one of the jurors testified. His testimony can be summarized as follows. Approximately 45 minutes after they went into deliberation, a statement was made by an unidentified juror that he really wished that Appellant had testified because the juror would like to have heard what Appellant said. Powell admonished him that they could not talk about that and could not bring it into the deliberations. After lunch, it came up again by way of a statement by one of the jurors that if he had been innocent he would have been on the witness stand, and other jurors speculated as to why he did not testify. When Powell was asked the number of times it came up, he

first said three or four, then changed it to maybe eight to ten times, based on the length of time they were together deliberating. He speculated some of the jury made a decision based upon the fact he did not take the stand. He also stated every time it was brought up, he told the jurors that they should not talk about it and finally they stopped talking about it. He related the initial vote was 10–2 to convict, and after an hour and one-half to two hours, the other hold-out decided to vote guilty. He said he didn't know whether or not the failure to testify was instrumental in the other juror who was holding out for "not guilty," changing his mind or not. He stated he had *not* changed his mind from "not guilty" to "guilty" based upon any conversation concerning the failure of the defendant to testify.

The record reflects the jury sent a note to the judge after five hours that they were deadlocked, at which time the jury was given further instructions and told to resume their deliberations. The judge finally sequestered the jury and the next morning they resumed their deliberations. Two or three hours later they came in with a verdict of "guilty" in both cases.

Granting or denying a motion for new trial rests within the sound discretion of the trial court, and in absence of abuse of that discretion its decision will not be disturbed on appeal. *State v. Lyons*, 812 S.W.2d 336 (Tex.Cr.App.1991). The jury was instructed during *voir dire* and again in the jury charge that they were not allowed to consider Appellant's silence. At the hearing on the motion for new trial, only Powell testified the jury discussed the accused's failure to testify. Not every mention of an accused's failure to testify requires reversal of the conviction. *Powell v. State*, 502 S.W.2d 705 (Tex.Cr.App.1973). To constitute reversible error, the reference must amount to *a discussion* by the jurors or used as a *circumstance* against the accused. *Powell* at 711. Juror Powell was the last hold-out over several hours, and he testified he did not consider the failure of the defendant to testify as a circumstance against the Appellant. It appears from the record, Appellant's coun-

sel had approached this juror after trial and informed him the complaining witnesses had come forward and told the prosecution Appellant had not been as harsh as had been shown at trial. The judge was aware of this when considering the credibility of the juror's testimony at the hearing on the motion for new trial. Powell's testimony shows the references that were made to Appellant's failure to testify were made early in deliberations, and the fact that juror Powell reminded the other jurors several times that they were not supposed to discuss Appellant's silence should cure any harm from the discussions. *See Peacock v. State*, 690 S.W.2d 613, 617 (Tex.App.—Tyler 1985, no pet.), (a discussion regarding the accused's failure to testify was harmless in view of the jury foreman's admonishment to the jury that it could not be used against him). Powell's testimony failed to show that the jury used Appellant's failure to testify as a *circumstance* against the accused, or that it amounted to a *discussion*. More importantly, there is a complete absence of an explicit statement by any juror that they were voting for a conviction based upon the failure to testify. Accordingly, the trial court did not abuse his discretion in overruling Appellant's motion for new trial on this basis. The first and second points of error are overruled.

In point of error number three, Appellant argues that the trial court erred in overruling Appellant's motion for new trial regarding the prosecutor's alleged failure to disclose material evidence. In his motion for new trial, Appellant alleged two members of the prosecution had approached counsel for Appellant after the trial and requested Appellant testify against his co-defendant, Jones. The victims had characterized Appellant as not being as harsh as Jones; nor did he threaten them. As we understand this point of error, Appellant complains that prior to trial, in discussions with the victims about possible immunity, they informed the prosecutors that while Appellant was sometimes polite to them throughout the terrible ordeal, he would also become angry with them. The victims, however, wanted both Appellant and Jones prosecuted. It is the fact that this conversation was not made available to Ap-

pellant that he complains of, maintaining the prosecution should have made him aware of this discussion. Our reading of the record reveals it is clear what Appellant and Jones did that might have been exculpatory was brought out during trial.

Abbott testified that she was trying to cooperate with Appellant so that he would not kill her, and also so that he would trust her so she could possibly escape. The fact the State may have considered offering a grant of immunity could not be construed to mean the State had favorable evidence it was suppressing.

The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the evidence may have had an effect on the outcome of the trial. *Crane v. State,* 786 S.W.2d 338, 348 (Tex.Cr. App.1990), *citing Ransonette v. State,* 550 S.W.2d 36, 39 (Tex.Cr.App.1976); *Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Cr.App. 1980). The elements which must be shown are: (1) suppression of evidence by the prosecution after a request by the defense; (2) which is favorable for the defense; and (3) the materiality of the evidence. From reading the record, we find Appellant has not met any of the three elements. No evidence was shown that the prosecutor intentionally "suppressed" any evidence. Testimony at the motion for new trial indicates the State was interested in prosecuting the Appellant's confederate Jones for reasons which had become evidence during trial, and because the victims believed that he was more cruel than the Appellant. All of these facts were shown and heard by the jury throughout the trial. Therefore, since Appellant has not shown that the State's so-called obstruction of the victim's views would have affected the outcome of the trial in his favor or the materiality of the victims' views, we fail to find error. However, if there was error, based upon all the evidence, we hold it was harmless beyond a reasonable doubt. Appellant's third point of error is overruled.

In point of error number four, Appellant complains the trial court abused its discretion in denying his motion to quash the indictment. Prior to trial, Appellant filed a motion to quash wherein he claimed the in-dictment failed to state an offense, and alternatively, failed to give adequate notice of the offense charged. Specifically, Appellant appears to complain that the allegations of "threats, force, [and] violence," and the State's failure to advise which potential definition of "without the effective consent" the State would attempt to prove, rendered the indictment insufficient to allow Appellant to prepare a proper defense or to enable him to plead any judgment rendered as a bar to further prosecution. He claims the State failed to show which definition of "without consent" they intended to prove at trial. In support of this point, he argues when the State relies upon a defendant's act or omission to negate consent, the indictment must allege which of the statutory negatives vitiated that consent.

First, we note that the indictment alleged the Appellant:

did then and there intentionally and knowingly, by threats, force and violence directed toward Cindy Abbott, cause penetration of the female sexual organ of the said Cindy Abbott, a person not a spouse of said Charles Ray Smith without the consent of the said Cindy Abbott, ... and by acts and words, placed the said Cindy Abbott in fear that death, serious bodily injury, and kidnapping would be eminently inflicted on the said Cindy Abbott.

. . . .

[The other counts are identical except they allege a different manner or means of committing the offense.]

The question is whether the indictment alleges all of the essential elements of the offense sought to be charged, and second, whether it puts Appellant on notice of the charges against him.

An indictment is sufficient if it contains elements of the offense charged, fairly informs the defendant of charges he must prepare to meet, and enables defendant to plead acquittal or conviction in bar to future prosecution for the same offense. *United States v. Moody,* 923 F.2d 341 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 80, 116 L.Ed.2d 54 (1991); *Clark v. State,* 796

S.W.2d 551 (Tex.App.—Dallas 1990, no pet.). A motion to quash an indictment should only be granted if the language concerning a defendant's conduct is so vague or indefinite as to deny defendant effective notice of acts he allegedly committed. *DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex.Cr.App.1988). Usually, an indictment which tracks the language of the statute is legally sufficient, and the State does not need to allege facts which are merely evidentiary in nature. *Bynum v. State,* 767 S.W.2d 769, 778 (Tex.Cr.App.1989); *Daniels v. State,* 754 S.W.2d 214 (Tex.Cr. App.1988); *Hogue v. State,* 752 S.W.2d 585 (Tex.App.—Tyler 1987, pet. ref'd). In determining whether the charging instrument alleges all the necessary elements of an offense, the instrument must be read as a whole and construed liberally. *Thompson v. State,* 697 S.W.2d 413, 415 (Tex.Cr.App.1985). Construction of an indictment should be done by practical considerations, not technical ones, and by the indictment as a whole. *Whetstone v. State,* 786 S.W.2d 361 (Tex.Cr. App.1990).

 The provisions of the Penal Code, in effect at the time of the offense, which discuss consent in relation to sexual assault are sections 1.07 and 22.011. Section 1.07(a)(12) defines "effective consent" by elimination as not effective if "induced by force, threat or fraud." Section 22.011 provides that a sexual assault is without consent if:

(1) the actor compels the other person to submit or participate by the use of physical force or violence; [or]

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat....

TEX.PENAL CODE ANN. § 22.011(b) (Vernon 1989).

Applying a liberal construction to the indictment in this case, the indictment tracks Section 22.011 of the Penal Code, and charges the necessary elements of the offense and puts the Appellant on notice of the charges against him. In *Adams v. State,* 707 S.W.2d 900 (Tex.Cr.App.1986), our Court of Criminal Appeals held that while a defendant's right to demand the nature and cause of accusations against him must be satisfied from the face of the charging instrument, the Court also held that: "It appears to be a distinct question whether the particular notice defect prejudiced the substantial rights of the defendant." *Id.* at 902–03. The Court went on to say that Article 21.19 of the CODE OF CRIMINAL PROCEDURE directs the court to determine whether, although a right has not been satisfied from a charging instrument, the particular defect of notice harmed the defendant. *Id.* at 903. The question here is whether the Appellant had notice adequate to prepare his defense. A three part test has been developed in order to answer this question: (1) whether the charging instrument failed to convey some requisite element of notice; (2) whether, in the context of that particular case, this had an impact on the defendant's ability to prepare his defense; and (3) how great an impact. *Opdahl v. State,* 705 S.W.2d 697 (Tex.Cr.App.1986).

We find the indictment sufficient to put the Appellant on notice and to not deprive him of his ability to prepare for trial. When reading the complete indictment it is clear that it alleged that consent, if given by Abbott or Catoe, was not effective consent because Appellant compelled them to submit by threats, force, or violence in the form of acts and words which placed the victims in fear that death, serious bodily injury, and kidnapping would be imminently inflicted upon them. The actual "acts" and "words" would be evidentiary. This point of error is overruled.

The judgment is **affirmed.**