**The STATE of Texas, Appellant,**

v.

**Alfonso BLANCO a/k/a "Poncho", Appellee.**

**No. 13–96–390–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 14, 1997.

Rehearing Overruled Oct. 9, 1997.

Reynaldo S. Cantu, Jr., Brownsville, for appellant.

Yolanda De Leon, Dist. Atty., John A. Olson, Asst. Dist. Atty., Brownsville, for appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Alfonso Blanco, appellee, was convicted of the offense of aggravated assault on his plea of not guilty. The trial court thereafter granted appellee's motion for new trial. The State, in a single point of error, contends that the trial court abused its discretion in granting appellee's motion. We affirm and remand for new trial.

### FACTUAL BACKGROUND

Appellee, appellee's brother, Jose Mancias, Carlos Herrera, and Oscar Cantu were drinking beer together in the early morning hours of August 9, 1995. While playing with a loaded pistol, appellee's brother, Eduardo, shot and killed Carlos Herrera. Oscar Cantu, the complainant in the case at hand, refused to help the others dispose of Carlos's body. While leaving the scene, Cantu was shot at and wounded by either appellee or his brother.

With Eduardo out of the country,[1] the State charged appellee with the attempted murder and aggravated assault of Oscar

---

1. Apparently, Eduardo left the country for Mexico after the shooting where he was apprehended by Mexican authorities on other charges.

Cantu.[2] Appellee pleaded not guilty and the case proceeded to trial. The evidence adduced at trial on the issue of appellee's guilt was conflicting. Mancias testified that he witnessed appellee shoot at Cantu as he (Cantu) attempted to leave. Cantu himself testified that, although he did not see the shooter, he heard several shots from appellee who was standing nearby. Appellee, however, in a voluntary statement given to the authorities, claimed that it was his brother, Eduardo, who shot at a fleeing Cantu. Defense witness Juan Gonzalez testified that, based on his study of the crime scene, photographs, and his knowledge of bullet trajectories, appellee could not have fired the shots from where Cantu had placed him at the time of the shooting. The jury, after hearing the evidence, returned their verdict of guilt as to the lesser offense of aggravated assault, and on June 28, 1996, the trial court sentenced appellee to sixteen years imprisonment.

## MOTION FOR NEW TRIAL

On June 28, 1996, appellee filed a motion for new trial in which he alleged (1) that evidence establishing his innocence had been intentionally withheld by the prosecution, *see* TEX.R.APP. P. 30(b)(5), and (2) reversible error through the State's failure to comply with *Brady v. Maryland.* *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)(failure to disclose objectively exculpatory information to defense counsel). In a supporting affidavit, appellee's trial counsel claimed that a week after appellee's trial, he learned that the State had not provided him with an exculpatory statement from appellee's brother in which Eduardo corroborated appellee's statement that it was Eduardo who shot Cantu.[3] At the hearing

on his motion, appellee argued that had the State complied with *Brady* or his request for discovery of exculpatory information, he would have had evidence (Eduardo's statement) to corroborate his statement and the testimony of a defense witness. The State argued that a new trial based on a *Brady* violation was not warranted under the facts of appellee's case.

## ORDER FOR NEW TRIAL

On July 3, 1996, after the hearing on appellee's motion, the trial judge orally granted appellee's motion for new trial stating "the court will grant a new trial based on section 6 of Rule 30 [Texas Rules of Appellate Procedure], the grounds for new trial, being that new evidence has been discovered."[4] In a single point of error, the State claims that the trial court abused its discretion in granting a new trial on the basis of newly-discovered evidence.

■ It is well established that the granting of a motion for new trial is addressed to the sound discretion of the trial court, and its decision should not be disturbed on appeal absent a clear abuse of discretion. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex. Crim.App.1993)(en banc); *State v. Trevino,* 930 S.W.2d 713, 715 (Tex.App.—Corpus Christi 1996, pet. ref'd). We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Lewis,* 911 S.W.2d at 7. We therefore examine the record to determine whether the trial court granted the new trial without reference to any guiding rules or principles or, in other words, whether the act was arbitrary or unreasonable. *Montgomery v. State,* 810

---

2. *See* TEX. PENAL CODE ANN. §§ 19.01 & 22.02(a) (Vernon 1994), respectively.

3. Eduardo's statement was given to authorities during his detention in a Mexican jail. It stated, in pertinent part: "Oscar ran, I ran after him, he told me that he wasn't going to do anything because he wasn't going to get in trouble, I pointed my gun at him and shot four times, I know I hit him at least once because I saw him stumble, he got in the car and left."

4. Rule 30(b)(6) of the Texas Rules of Appellate Procedure was legislatively overruled by the pas-

sage of article 40.001 of the Texas Code of Criminal Procedure. Article 40.001 is effective for cases in which the offense was committed on or after September 1, 1993, and provides: "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Article 40.001 differs from the old Rule 30(b)(6) in that it requires the new evidence to be material, as well as favorable. In light of our holding today, this distinction is irrelevant to the outcome of this appeal.

S.W.2d 372, 380 (Tex.Crim.App.1990); *Trevino,* 930 S.W.2d at 715.

■ With respect to the granting of a new trial in a criminal case, the Texas Rules of Appellate Procedure provide,

Ruling. The judge shall not sum up, discuss or comment on evidence in the case. The judge shall grant or refuse the motion for new trial.

TEX.R.APP. P. 31(e)(2). In light of this rule, we find the trial judge's oral comment stating his reason for granting appellee's motion to be inappropriate. In the written order signed August 1, 1996, however, the trial court, in accordance with Rule 31, did not specify the ground on which the new trial was granted. TEX.R.APP. P. 31(e)(2); *State v. Lyons,* 785 S.W.2d 946, 947 (Tex.App.—Fort Worth 1990), *rev'd on other grounds,* 812 S.W.2d 336 (Tex.Crim.App.1991). Accordingly, in reviewing the trial court's ruling, we will consider whether the trial judge abused his discretion by granting the motion for new trial based only on appellee's motion. "We will not consider the statements of the trial court that relate to its rationale for granting the new trial." *State v. Reynolds,* 893 S.W.2d 156, 159 (Tex.App.—Houston [1st Dist.] 1995, no pet.)(new trial granted by trial judge "in the interest of justice" affirmed by court of appeals on the basis of newly discovered evidence as pleaded in defendant's motion for new trial); *see also State v. Gonzalez,* 855 S.W.2d 692, 694–95 (Tex.Crim.App.1993)(either the motion for new trial, or its supporting affidavit, must allege sufficient grounds to apprise the trial judge and the State as to why the defendant is entitled to a new trial); *State v. Shelton,* 869 S.W.2d 513, 514 (Tex.App.—Tyler 1993, no pet.)(although trial court stated no reason for its granting of a new trial, the State need defend only against the allegations asserted in defendant's motion for new trial). We will affirm the new trial so long as we determine that the court acted within its discretion in granting the motion under any one of the grounds alleged in appellee's motion. *Shelton,* 869 S.W.2d at 515; *Lyons,* 785 S.W.2d at 947.

Such a course of action is in line with the general proposition that the written order granting the new trial is controlling. For example, we have previously held that the order granting a motion for new trial must be entered in writing to be effective. *See Preston v. State,* 667 S.W.2d 331, 335 n. 1 (Tex.App.—Corpus Christi 1984, no pet.). Furthermore, absent a written order, an oral pronouncement is insufficient to prevent the overruling of a motion for new trial by operation of law. *See State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47, 48–49 (Tex.Crim.App.1987)(although hearing held within 75 days, because the court orally granted the motion but did not sign the order until 80 days after sentencing, trial court required to vacate its order granting new trial); *Garza v. State,* 904 S.W.2d 877, 878 (Tex.App.—Corpus Christi 1995), *aff'd,* 931 S.W.2d 560 (Tex.Crim.App.1996)(oral order noted in written docket sheet entry prior to 75th day is not sufficient to prevent automatic overruling of new trial motion).

Because we find the record sufficient to support the new trial on the *Brady* violation as pleaded by appellee in his motion for new trial, we affirm.

### BRADY VIOLATION

■ Under *Brady,* a prosecutor has an affirmative duty to turn over to the accused all material, exculpatory evidence. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Lagrone v. State,* 942 S.W.2d 602, 615 (Tex.Crim.App.1997); *Ex parte Kimes,* 872 S.W.2d 700, 702 (Tex.Crim. App.1993)(en banc). Thus, a defendant is entitled to a new trial on a *Brady* violation if he shows (1) the prosecutor actively or negligently failed to disclose evidence, (2) the evidence is favorable to the accused, and (3) the evidence is material; that is, the evidence creates a probability sufficient to undermine the confidence in the outcome of the proceeding. *Kimes,* 872 S.W.2d at 702; *Butler v. State,* 736 S.W.2d 668, 670 (Tex.Crim.App. 1987). A defendant's due process right to a fair trial is violated when the State withholds evidence that is both material and favorable to the accused irrespective of the good faith or bad faith of the prosecution. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. Although the prosecution has no duty to turn over evi-

dence not in its possession or not known to exist, *Hafdahl v. State,* 805 S.W.2d 396, 399 n. 3 (Tex.Crim.App.1990), *cert. denied,* 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991), the prosecutor has the duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police. *Kyles v. Whitley,* 514 U.S. 419, 419, 115 S.Ct. 1555, 1557, 131 L.Ed.2d 490 (1995).

The record in the case at hand shows that appellee filed a pre-trial motion for discovery wherein he requested discovery of "all evidence which might tend in any manner to exculpate the defendant on the issue of guilt or innocence or which might be favorable to the defendant upon such issue." Appellee's attorney, in an affidavit attached to appellee's motion for new trial, testified that he was informed by Joe Hernandez, the lead prosecutor in appellee's case, that aside from the documents made available to appellee, there was no other discoverable material available. It is undisputed that Eduardo's statement, which was given to authorities prior to the start of appellee's trial, was not included in the material made available to appellee prior to, or during appellee's trial.

Eduardo's statement was, however, included in Eduardo's own case file. This separate file was in the custody of Elena Salinas, the assistant district attorney who was directly involved in the cases against both Eduardo and appellee.[5] Salinas testified that although she was aware of the existence of Eduardo's statement prior to appellee's trial, she did not know of the contents of Eduardo's statement until days after appellee was found guilty when Edmund Cyganiewicz, Eduardo's attorney, informed her that he intended to contact appellee's attorney regarding the exculpatory nature of Eduardo's statement.

However, Deputy Sheriff Reyna, the police officer who took Eduardo's and appellee's statements, testified that he turned over a copy of Eduardo's statement to Salinas, and discussed the exculpatory portion of Eduardo's statement with Salinas prior to appellee's trial. Although Reyna could not remember physically handing a copy of Eduardo's statement to Hernandez, Reyna testified that he remembered advising Hernandez of the existence and nature of Eduardo's statement prior to appellee's trial.

Hernandez testified that he was never given a copy of Eduardo's statement, and he denied ever discussing the exculpatory nature of the statement with officer Reyna. Hernandez added, however, that if he had known about Eduardo's statement prior to trial, he would have made it available to the defense.

We hold this evidence sufficient to support a finding that the prosecutor actively or negligently failed to disclose Eduardo's statement to appellee.

This evidence is also sufficient to support a finding that the withheld statement was both favorable and material to appellee's defense. Although appellee pleaded not guilty and argued at trial that he was not the person who shot at the fleeing Cantu, Eduardo's statement represents the only piece of evidence, aside from appellee's own statement, implicating Eduardo as the shooter. Additionally, as a statement against penal interest subjecting Eduardo to punishment for the attempted shooting of Oscar Cantu, Eduardo's statement represents perhaps the strongest piece of evidence in support of appellee's defensive theory. Accordingly, we find that the withheld statement was favorable to appellee, and was such that its exclusion from appellee's consideration undermines the confidence in the outcome of the proceeding.

We affirm the trial court's grant of appellee's motion for new trial based on a violation of the rule announced in *Brady v. Maryland.* The State's sole point of error is overruled, and the case is remanded for new trial.

---

5. Salinas was lead counsel in the State's case against Eduardo, and sat second chair in the State's case against appellee.