

# NUMBERS 13-21-00404-CR & 13-21-00405-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                           Appellant,

v.

CECILIA GARCIA,                                               Appellee.

## On appeal from the County Court at Law
## of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Tijerina**

In appellate cause numbers 13-21-00404-CR and 13-21-00405-CR, appellant the

State of Texas appeals the trial court's dismissal of its charges of unlawful restraint and

evading arrest or detention, both Class A Misdemeanors, against appellee Cecilia

Garcia.[1] *See* TEX. PENAL CODE ANN. §§ 20.02, 38.04. By one issue, the State contends

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(1) (allowing the State to appeal a trial court order

that the trial court improperly dismissed its charges against Garcia with prejudice because there is no evidence that either a due process, Article 39.14(a), *see* TEX. CODE CRIM. PROC. ANN. art. 39.14(a), or *Brady* violation, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963), occurred. We reverse and remand.

## I. BACKGROUND

On April 28, 2020, Lieutenant Tchanee Meissner of the Rockport Police Department responded to a complaint of a domestic disturbance at an apartment complex. Eventually, Lieutenant Meissner interviewed Annaley McAshen and Garcia who told her that they had been in an argument and that McAshen had allegedly bitten Garcia's arm. On May 2, 2020, four days after her initial encounter with Garcia and McAshen, Lieutenant Meissner was dispatched once again to investigate another domestic disturbance involving Garcia and McAshen. This time Lieutenant Meissner arrested Garcia for unlawful restraint and evading arrest.[2] In appellate cause number 13-21-00404-CR, on October 8, 2020, the State charged Garcia by information with the offense of evading arrest. In appellate cause number 13-21-00405-CR, the State charged Garcia by information with the offense of unlawful restraint. The trial court set a trial for both offenses.

---

that dismisses an indictment, information, or complaint).

[2] In appellate cause number 13-21-00404-CR, the information alleges that on May 2, 2020, Garcia "intentionally fle[d] from Joel Stevens, a person [Garcia] knew was a peace officer who was attempting lawfully to arrest or detain [Garcia]." Officer Stevens did not testify at the motion to dismiss hearing. The information in appellate cause number 13-21-00405-CR, states that on May 2, 2020, Garcia "Intentionally or knowingly by force, intimidation, or deception, restrain [McAshen] hereafter styled the complainant, without her consent, by restricting the movement of the complainant, namely by confining complainant-by blocking the door with her body."

2

On September 21, 2021, Garcia filed three pretrial motions to dismiss the information in both causes. The trial court held a motion to dismiss hearing on October 14, 2021. At the hearing, the trial court heard argument from both sides and testimony from Lieutenant Meissner. The trial court also reviewed Lieutenant Meissner's body camera footage from the April 28, 2020 encounter with Garcia. No evidence concerning the May 2, 2020 incident where Garcia was arrested was presented.

At the hearing, Lieutenant Meissner testified that on April 28, 2020, she went to an apartment complex to investigate a possible domestic disturbance. Lieutenant Meissner stated that she met with McAshen who said that "she was assaulted[,] and her airway was impeded by her roommate and . . . it was an ex-girlfriend situation and they were fighting over a game and her talking to somebody." Lieutenant Meissner escorted McAshen to her apartment to retrieve her belongings, where they encountered Garcia. Lieutenant Meissner testified that Garcia told her that McAshen bit her arm. Garcia also informed her that she had a scratch on her neck and was unsure how the scratch happened "but she thought it was during a scuffle and she said that Ms. McAsh[e]n was on her—or all over her." Lieutenant Meissner photographed an apparent bite mark on Garcia's arm and a scratch on Garcia's neck. The body camera footage documents Lieutenant Meissner's photography of Garcia's injuries.

According to Lieutenant Meissner, although she had a "technical issue," she uploaded the pictures to the software program used to generate police reports at the

3

Rockport Police Department. Lieutenant Meissner stated that although she "did not specifically go through each one," some small icons popped up on the computer screen, and she saw that "[i]t said pictures." The State asked, "And you don't know whether the photos of the injuries to [Garcia] were actually downloaded[sic]?" Lieutenant Meissner replied, "those were there." Lieutenant Meissner acknowledged that the pictures were subsequently lost.

On cross-examination by Garcia, Lieutenant Meissner said, "I did what I was suppose[d] to do by taking and uploading the photos. Whether they are there or not, I was never alerted . . . . So[,] I could never correct that issue. I imported the photos[,] so I did my due diligence." Lieutenant Meissner stated that in her opinion the loss of the photos was not malicious and was due to a computer issue. Lieutenant Meissner clarified that when she took photos of Garcia's injuries, the camera was foggy. Lieutenant Meissner contradicted Garcia's assertion that her body camera footage did not show an injury on Garcia's arm and stated that although teeth marks were not discernible, "[i]t showed a clear picture of a swollen arm. . . ."

Garcia argued to the trial court that she needed the photos to defend against the charges. Garcia said, "We need those photos, Judge," but she did not elaborate. Garcia stated,

> We are prohibited due to the failure to preserve the evidence that we need in this case. We had here a training supervisor that was responsible for taking the pictures . . . and even for the purposes of capturing who I am talking to, that was clearly captured on the DVD body cam. There she was in full body. But they still needed pictures.

4

Garcia continued to claim that she needed the photos for her defense without further elaboration. Garcia told the trial court that the State took the pictures, and she did not receive them. Garcia said, "The constitutionality of due process requires no bad faith." The trial court asked, "So 39.14 just you are saying is black and white [sic]. If [the pictures] existed, [they] must be produced." Garcia replied, "That's correct, Judge." The trial court asked Garcia to explain the analysis pursuant to *Brady*. *See Brady*, 373 U.S. at 87. Garcia responded:

> Judge, in my review of the law, the fact that we are unable to use those photos as evidence in order to not only fight and defend the allegations . . . but also to use in cross-examination and in . . . defense without giving them exactly what our trial strategy is that we have done before. But it is our inability to properly defend her and cross-examine. We have a right to confrontation of . . . the alleged victim, Judge. And without those photos, that prohibits us from doing a proper cross-examination.

Garcia did not present any evidence. The trial court dismissed both cases and issued findings of fact and conclusions of law stating that the State violated the due process clause of the United States Constitution, Article 39.14(a) of the Texas Code of Criminal Procedure, and *Brady*. See U.S. CONST. amend. 14; TEX. CODE CRIM. PROC. ANN. art. 39.14; *see also Brady*, 373 U.S. at 87. This appeal followed.

## II.    STANDARD OF REVIEW

A trial court's ruling on a motion to dismiss is reviewed applying a bifurcated standard. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). In our review, we "must give almost total deference to a trial court's findings of facts that are supported by the record, as well as mixed questions of law and fact that rely upon the

5

credibility of a witness." *Id.* However, our review of pure questions of law and mixed questions that do not depend on credibility are reviewed de novo. *Id.* We must uphold the trial court's ruling if any theory of law applicable to the case is correct and if the ruling is supported by the record. *Saenz v. State*, 564 S.W.3d 469, 473 (Tex. App.—El Paso 2018, no pet.).

### III.  AUTHORITY TO DISMISS CHARGING INSTRUMENT

Generally, a trial court lacks authority to dismiss a case without the State's consent, and a trial court has no inherent power to dismiss a prosecution. *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003); *see State v. Johnson*, 821 S.W.2d 609, 613 (Tex. Crim. App. 1991) (en banc). There are limited exceptions to the general rule where a trial court may dismiss a case without the State's consent, "such as when a defendant has been denied a speedy trial, when there is a defect in the charging instrument, or, pursuant to Article 32.01, when a defendant is detained and no charging instrument is properly presented." *Johnson*, 821 S.W.2d at 612, n.2 (citing TEX. CODE CRIM. PROC. ANN. art. 32.01); *see Mungia*, 119 S.W.3d at 816. In addition, a trial court is permitted to dismiss an indictment "to remedy a violation of the Sixth Amendment right to counsel." *Mungia*, 119 S.W.3d at 816.

However, a trial court is not bound to these established exceptions. *See id.* at 817. Rather, as the Texas Court of Criminal Appeals explained, "although a particular constitutional violation has not yet been recognized as a basis for a trial court to dismiss a charging instrument, this does not preclude a trial court from having authority to dismiss

6

on that ground." *Id.* (first citing *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995); and then *State v. Terrazas*, 962 S.W.2d 38, 41 (Tex. Crim. App. 1998)). Although permitted to do so, a trial court's dismissal of the State's charging instrument to remedy a constitutional violation constitutes "'a drastic measure only to be used in the most extraordinary circumstances.'" *Id.* at 817 (quoting *Frye*, 897 S.W.2d at 330). "Therefore, where there is no constitutional violation, or where the appellee's rights were violated but dismissal of the indictment was not necessary to neutralize the taint of unconstitutional action, the trial court abuses its discretion in dismissing the charging instrument without the consent of the State." *Id.*; *see also State v. Wyatt*, No. 13-13-00496-CR, 2015 WL 3522967, at *2 (Tex. App.—Corpus Christi–Edinburg June 4, 2015, pet. ref'd) (mem. op., not designated for publication).

## IV. DISCUSSION

The State argues that the trial court improperly concluded that it violated Garcia's due process rights, *Brady*, and Article 39.14(a). Therefore, the State asserts that the trial court erroneously dismissed its indictments in both causes.

### A. Withheld Evidence Versus Lost Evidence

A *Brady* violation occurs when the State either willfully or inadvertently fails to disclose material evidence *it possesses* that is favorable to a defendant. *Brady*, 373 U.S. at 87; *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006); *Kulow v. State*, 524 S.W.3d 383, 388 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). To prove a *Brady* violation occurred, the defendant must show that the: (1) State failed to disclose evidence,

7

regardless of the prosecution's good or bad faith; (2) withheld evidence is favorable to the defendant; and (3) evidence is material in that there is a reasonable probability that had the evidence been disclosed, the trial's outcome would have been different. *State v. Blanco*, 953 S.W.2d 799, 802 (Tex. App.—Corpus Christi–Edinburg 1997, pet. ref'd).

In addition, due process requires the State to preserve evidence that may significantly aid the defendant's defense. *Id.* "So the Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two areas: *Brady* addresses exculpatory evidence still in the government's possession. *Youngblood* and *Trombetta* address cases in which the government no longer possesses the disputed evidence." *Id.* (first citing *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (providing under *Brady*, "the good or bad faith of the State [is] irrelevant when the State fails to disclose to the defendant material exculpatory evidence," but is relevant "when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant"); and then citing *California v. Trombetta*, 467 U.S. 479, 488 (1984) (holding that no violation of the Constitution occurred when the State failed to retain breath samples for the defendants because the State "did not destroy [the defendants'] breath samples in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny, . . . the officers were acting 'in good faith and in accord with their normal practice,' [and t]he record contains no allegation of official animus towards [the defendants] or of a conscious effort to suppress exculpatory evidence")). To

8

show a due process violation in failing to preserve potentially useful evidence, the defendant must prove bad faith on the part of law enforcement. *Youngblood*, 488 U.S. at 57–58 (holding that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law).

## B.     Nature of the Evidence

Here, the trial court did not make any specific findings supporting its conclusion that the evidence was material pursuant to *Brady*. Moreover, at the motion to dismiss hearing, no evidence was presented showing that the pictures were material to Garcia's defense in either cause. At the motion to dismiss hearing, it was established that Lieutenant Meissner took the pictures on a different date than the date that the offenses allegedly occurred. According to Lieutenant Meissner, the pictures she took on April 28, 2020, documented a scratch on Garcia's neck that Garcia stated she received in an unknown manner and a "bitemark" attributed to McAshen by Garcia on April 28, 2020.[3] Garcia argued that she needed these pictures to defend herself from the charges that occurred on May 2, 2020. However, Garcia never explained in what manner these pictures would help in her defense to the charges of evading arrest and unlawful detention, she did not testify at the motion to dismiss hearing, and she failed to present evidence supporting such a conclusion. *See Hampton v. State*, 86 S.W.3d 603, 612 (Tex.

---

[3] The evidence shows that Garcia told Lieutenant Meissner that is how she received the bite; however, Garcia was not under oath when she made that claim.

9

Crim. App. 2002) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense."). Accordingly, the best that can be said of the pictures is that they could have potentially been useful to Garcia.[4] *See Burdick v. State*, 474 S.W.3d 17, 25–26 (Tex. App.—Houston [14th Dist.] 2015, no pet). That is not enough to show a *Brady* violation.

Moreover, there is nothing in this record showing that that there is a reasonable probability that had these pictures been disclosed, the outcome of either the unlawful restraint cause or the evading arrest cause would have been different as no trial was held in either cause. *See Blanco*, 953 S.W.2d at 802. Thus, Garcia failed to meet her burden pursuant to *Brady*. *See id.*

## C.  Bad Faith

Furthermore, these causes do not involve the State's failure to turn over evidence in its possession. These causes involve the failure of the State to properly preserve the pictures. Thus, we conclude that these causes are controlled by the "failure to preserve" cases. *See Youngblood*, 488 U.S. at 57–58; *Moody v. State*, 551 S.W.3d 167, 170 (Tex. App.—Fort Worth 2017, no pet.) ("Although courts occasionally blur the distinction

---

[4] We note that the ordinary remedy when the State violates *Brady* is a reversal of the conviction and a new trial. *See Ex parte Miles*, 359 S.W.3d 647, 664 (Tex. Crim. App. 2012); *State v. Blanco*, 953 S.W.2d 799, 802 (Tex. App.—Corpus Christi–Edinburg 1997, pet. ref'd) (explaining that a defendant is entitled to a new trial upon establishing a *Brady* violation occurred). Thus, we are not convinced that dismissal of the charging instrument would have been appropriate in this case had a *Brady* violation been shown. Nevertheless, we assume but do not decide, for purposes of this memorandum opinion, that dismissal would have been appropriate in that situation.

10

between *Youngblood* and *Brady*, *Youngblood* is properly applied to cases in which the government no longer possesses the disputed evidence, whereas *Brady* is properly applied to cases in which exculpatory evidence remains in the government's possession."). Under the "failure to preserve" standard, Garcia must have demonstrated that the State acted in bad faith by failing to preserve the complained-of pictures. "[B]ad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Ex parte Napper*, 322 S.W.3d 202, 238 (Tex. Crim. App. 2010). A showing of negligence does not qualify as bad faith. *See Youngblood*, 488 U.S. at 58.

At the motion to dismiss hearing, Lieutenant Meissner testified that when she took the pictures, the lens fogged up, and she was unable to determine whether the pictures were clear. In addition, she stated that due to a "technical error," the pictures failed to load onto their software program. Lieutenant Meissner stated that she believed that she "did what [she] was suppose[d] to do by taking and uploading the photos" and that she had not been informed that the pictures were not there. She said, "I imported the photos[,] so I did my due diligence." This is the only evidence presented regarding what happened to the lost pictures. Thus, Garcia failed to present any evidence supporting a conclusion that the State acted in bad faith when the pictures failed to upload to the computer.

Accordingly, we conclude that there was no constitutional due process violation permitting the trial court to dismiss the State's charging instruments in both causes. Therefore, to the extent the trial court granted Garcia's motion to dismiss based on a due

11

process violation, the trial court abused its discretion in dismissing the charging instruments in both causes without the State's consent. *See Mungia*, 119 S.W.3d at 817; *see also Wyatt*, 2015 WL 3522967, at *2.

**D.      Article 39.14(a)**

The trial court also granted Garcia's motions to dismiss in each cause on the basis that the State violated Article 39.14(a) of the Texas Code of Criminal Procedure, which requires the State to provide the defendant with an open file of everything the State possesses in relation to the defendant's case. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (permitting the inspection and the electronic duplication, copying, and photographing of documents relating to the defendant including "any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and *that are in the possession, custody, or control of the state* or any person under contract with the state" (emphasis added)). However, Article 39.14(a) limits the breadth of discovery to anything that is in the *possession, custody, or control* of the State or any person under contract with the State. *See id.*

Here, the evidence conclusively establishes that the complained-of pictures were not in the State's possession, custody, or control because of a technical issue with uploading the pictures to the computer.[5] Therefore, the trial court's dismissal on this basis

---

[5] Recently, the Texas Court of Criminal Appeals stated that the proper inquiry when the State fails to disclose evidence in its possession pursuant to Article 39.14(a) is a relevant evidence standard and not the typical *Brady* material evidence standard. *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). "Relevant evidence is any evidence that has any tendency to make the existence of any fact of

12

was erroneous. We sustain the State's sole issue.

## V.  CONCLUSION

We reverse the trial court's judgments in both appellate causes and remand both

causes to the trial court for further proceedings consistent with this memorandum opinion.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of August, 2022.

---

consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* The evidence does not by itself need to "prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Id.*

Here, Garcia did not allege that the evidence was relevant, and the trial court did not make such a determination. In addition, Garcia produced no evidence regarding the relevance of the pictures. *See id.*; *see also State v. Muniz*, No. 13-19-00090-CR, 2020 WL 5056531, at *5–6 (Tex. App.—Corpus Christi–Edinburg Aug. 27, 2020, no pet.) (setting out that defense counsel testified that had he been aware of the undisclosed evidence, he would have changed his trial strategy and specifically detailed the manner in which his strategy would have changed).